CHARLES A. GRUBER (Utah Bar Number 07391) (California Bar Number 140672)
P.O. Box 900122
Sandy, UT 84090
Telephone: 801-523-0110
Fax: 801-523-3630
gruberattorney@yahoo.com
Attorney  for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND RELEVANT PRODUCTS LIABILITY LITIGATION | : : : : | 3:09-md-02100-DRH-PMF<br><br>MDL No. 2100 |
| -------------------------------------------------- STEVE CAMP AND CAROL CAMP, individually and as heirs of Emma Camp and Steve Camp as the Personal Representative of the Estate of Emma Camp | : : : : : | Judge David R. Herndon<br><br>COMPLAINT AND JURY DEMAND |
| Plaintiffs, | : | Civil Action No. 3:13-cv-10765-DRH-PMF |
| vs. | : | |
| BAYER PHARMA AG; BAYER SCHERING PHARMA  AG; SCHERING AG; BAYER HEALTHCARE PHARMACEUTICALS INC.; BERLEX, INC., BERLEX LABORATORIES, INC., BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER PHARMACEUTICALS CORPORATION, BAYER AG, BAYER HEALTHCARE AG, BAYER GESELLSCHAFT fur BETEILIGUNGEN mbH, BAYER HEALTHCARE PHARMACEUTICALS LLC; WATSON PHARMACEUTICALS INC.; WATSON LABORATORIES INC.; ACTAVIS, INC.; WATSON PHARMA INC.; TEVA PHARMACEUTICALS USA, INC.;TEVA PHARMACEUTICALS INDUSTRIES LTD; TEVAS AMERICAS; TEVA PHARMACEUTICALS; BAR PHARMACEUTICALS, LLC; BAR LABORATORIES, INC.;  BAR PHARMACEUTICALS, INC.;  BAR | : : : : : : : : : : : : : : : : : | |

**LABORATORIES and DOES 1-25 and
DOES 1-25**

      **Defendants.**

_____

Plaintiffs allege as follows:

## PARTIES, JURISDICTION & VENUE

1.    Plaintiffs Steve Camp and Carol Camp (hereinafter "Plaintiffs" ) were at the time of the events  described herein residents of the State of Utah living in Salt Lake County, Utah.

2.    Plaintiffs are the parents and heirs of Emma Camp ("Decedent" or "Deceased") who died on August 6, 2011.  Each plaintiff has an individual  wrongful death claim for the death of Emma.  Steve Camp is the Personal Representative of the Estate of Emma Camp. The Estate of Emma Camp has a survival action which it brings for the benefit of the Estate of Emma Camp. Pursuant to the survival action, the Estate of Emma Camp is entitled to recover any medial costs and other special damages as well as general damages for the pain and suffering caused to the Decedent prior to her death by the Defendants' negligence and acts.

3.    Defendants BAYER PHARMA AG; BAYER SCHERING PHARMA  AG; SCHERING AG; BAYER HEALTHCARE PHARMACEUTICALS INC.; BERLEX, INC., BERLEX LABORATORIES, INC., BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER PHARMACEUTICALS CORPORATION, BAYER AG, BAYER HEALTHCARE AG, BAYER  GESELLSCHAFT  fur  BETEILIGUNGEN  mbH,  BAYER  HEALTHCARE

2

PHARMACEUTICALS LLC    and its subsidiary undertakings  (collectively  "Bayer Defendants" or "Defendants") are all foreign business entities  doing business in the State of Utah and other states.

4.      These BAYER DEFENDANTS designed, tested, and marketed a product known as YASMIN or YAZ (DROSPIRENONE).  The Defendants market and advertise nation wide pharmaceutical products such as YASMIN (DROSPIRENONE) and marketed and advertised YASMIN (DROSPIRENONE) in all states including the State of Utah. This marketing in part was and  is directed at the general public and to young women and their health care providers in particular.

5.      The brand names Yasmin and Yaz herein are referred to  as Yasmin collectively and inter-changeably and any similar drospirenone  products similar to Yasmin or Yaz manufactured and distributed by the Bayer Defendants.

6.      The word "drospirenone" as used in this Complaint may  include the words drospirenone and ethinyl  estradiol if  relevant.

7.       Defendants Watson  Pharmaceuticals Inc.; Watson Laboratories Inc. Actavis, Inc.; Watson Pharma Inc.; and their subsidiaries  (collectively  "Watson Defendants" or "Defendants") are all foreign business entities  doing business in the State of Utah and State of Illinois and other states. These Defendants designed, tested, and marketed a generic pharmaceutical generic birth control  product known as ZARAH (DROSPIRENONE).  The Defendants market  and advertise nationwide their generic pharmaceutical  products such  as  ZARAH (DROSPIRENONE)  and  marketed  and

3

advertised ZARAH (DROSPIRENONE) in all states including the State of Utah. This marketing in part was and is directed at the general public and to young women and their health care providers in particular.

8.        Defendants Teva Pharmaceuticals USA, Inc.; Teva Pharmaceuticals Industries Ltd; Tevas Americas; Teva Pharmaceuticals and their subsidiaries (collectively "Teva Defendants" or "Defendants") are all foreign business entities doing business in the State of Utah and other states. These Defendants designed, tested, and marketed a generic pharmaceutical generic birth control product known as OCELLA (DROSPIRENONE). On information and belief, Plaintiffs allege that the Bayer Defendants also manufactured OCELLA (DROSPIRENONE) for and behalf of the Teva Defendants for sale by those Defendants. The Defendants market and advertise nationwide their generic pharmaceutical products such as OCELLA (DROSPIRENONE) and marketed and advertised OCELLA (DROSPIRENONE) in all states including the State of Utah. This marketing in part was and is directed at the general public and to young women and their health care providers in particular.

9.        Defendants Bar Pharmaceuticals, LLC; Bar Laboratories, Inc., Bar Pharmaceuticals, Inc. and Bar Laboratories and their subsidiaries (collectively "Bar Defendants" or "Defendants") are all foreign business entities doing business in the State of Utah and other states. These manufacturers designed, tested, and marketed a generic pharmaceutical generic birth control product known as OCELLA (DROSPIRENONE). The Bar Defendants were purchased by the Teva Defendants in or about 2008.   The

4

Defendants marketed and advertised nationwide their generic pharmaceutical products such as OCELLA (DROSPIRENONE) and marketed and advertised OCELLA (DROSPIRENONE) in all states including the State of Utah. This marketing in part was and is directed at the general public and to young women and their health care providers in particular. On information and belief, Plaintiffs allege that the Bayer Defendants also manufactured OCELLA (DROSPIRENONE) for and behalf of the Bar Defendants for sale by those Defendants.

10.     Defendants DOES 1-25 (collectively "Defendants") were in some way responsible for the negligence and resulting harm as described in this Complaint and their negligence actually and proximately contributed to the Plaintiffs' damages. Plaintiffs are informed and believe that at least some of these DOE Defendants were the agents and/or employees of the named Defendants or in some way contributed the Plaintiff's injuries. Some of these DOE Defendants were acting within the scope of their employment of the named Defendants and thus those named Defendants are liable under a theory of respondeat superior. Some of these DOE Defendants may also be corporate entities, limited liability entities, or any other similar form of business entity with which the Defendants have an ownership, management interest, legal or contractual relationship to provide functions and duties for which the Defendants are responsible but have delegated those functions or duties relating to the operation of the Defendants' business.   As their identities become known, the Doe Defendants will be identified. Other persons or entities designated a DOE Defendants were and are independent of the named Defendants but

5

in some way caused or contributed to the cause of the negligence described herein and the injuries sustained by the Plaintiff.  If and when such persons or entities are discovered, this Complaint will be amended to identify those DOE Defendants. The Plaintiff alleges each and every cause of action for his  injuries against each and every one of these DOE Defendants as if alleged and filed on the date which this Original Complaint was filed with the Court.

11.    Plaintiffs  claim damages in excess of $75,000 in this action, exclusive of interest and costs, to be established at trial for both of the individual wrongful death claims and for the survival action on behalf of the Estate of Emma Camp.

## JURISDICTION AND VENUE

12.    Jurisdiction and venue in this court are proper pursuant to 28 U.S.C. § 1332 based on diversity.   Plaintiffs are and has been a resident of the State of Utah. The MultiDistrict Litigation ("MDL") is in this Court and all cases filed are transferred to this Court.

13.    Defendants are foreign corporations and business entities and as such are corporate residents of other states other than Utah or Illinois or countries other than the United States.

14.    The Decedent was prescribed the Defendants' product, YASMIN (DROSPIRENONE), in the State of Utah, purchased the product in Utah, consumed the product in Utah, and suffered damages from the product in Utah. She took  prescribed

Yasmin, on information and belief she took samples of prescribed Yasmin given to her by her medical providers, and she took similar generic drospirenone   products given to her by her pharmacy all of which caused the Decedent's pulmonary embolism and death.

15.     The Decedent was prescribed a brand name product named and generally known as Yasmin or Yaz manufactured   by the brand name pharmaceutical company referred to in this Complaint as the Bayer Defendants,   but the pharmacy filling the prescription at times dispensed a generic of the brand name drug which were  the Watson, Bar, and Teva Defendants'   products, ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE), in the State of Utah.

16.     The Defendants advertised their drospirenone products  across the United States, including in the State of Utah and in the State of Illinois via their internet advertisements and other print media and professional media advertisements and in other media advertisements such as television and advocated the use of their product drospirenone product. The Defendants solicited business from persons and  entities and solicited ultimate consumers to contact their healthcare providers about drospirenone products and warranted that drospirenone  was a safe and effective medication.  The Defendants solicited  healthcare providers and health care facilities  to recommend and prescribe  drospirenone under its brand name and generic names  and warranted that these products were  safe and effective medication. The Defendants failed to warn these persons and entities about these brand and generic products related side effects including

7

but not limited to pulmonary embolism and resulting death and the increased risk of blood clots for extended time period following the use of these brand and generic products.

17.    The Defendants are believed to be foreign corporations incorporated in a State other than Utah or Illinois but who do business in the State of Utah and the State of Illinois.  By advertising and soliciting the sale of their product in Utah and Illinois and by shipping into and selling their product in Utah and Illinois, the Defendants  subjected themselves to the laws and jurisdiction of the State of Utah and to the United States' federal district court in the State of Utah. The MultiDistrict Litigation ("MDL") is in this Court, and all cases filed are transferred to this Court.

18.    On August 6, 2011, the Plaintiffs' daughter, the Decedent, died as a result of a pulmonary embolism caused by brand name drospirenone  and caused by similar generic drospirenone  products. The Defendants' faulty products and the inadequate warnings regarding the products including pulmonary embolism and resulting death and other serious and life threatening injuries were the proximate cause of the Decedent's pulmonary embolism and death.

19.    The Bayer Defendants' negligence  in failing timely to alter the labeling of YASMIN  to disclose the dangers of pulmonary embolism and death; in failing to timely approach the FDA about changing the label to adequately warn or to use the FDA's "changes-being-effected" (CBE) process which permitted drug manufacturers like the Defendants, without preapproval, to strengthen the warning label for Yasmin; and in failing to   timely send "Dear Doctor" letters, caused  and  allowed  generic  drug  makers  of

8

drospirenone products, which were the same drug as YASMIN but marketed under generic names, to distribute generic versions of Yamsin with inadequate warnings and was the proximate cause of the Decedent's death.

20.     The negligent  acts of the Defendants caused injury within the State of Utah and State of Illinois  in that the Plaintiffs  as residents of Utah lost the love, comfort and companionship of their daughter the Decedent who died  in Utah as a result of the Defendants' faulty product and because of the Defendants' failure to adequately warn about the dangerous and life threatening side effects of their products including but not limited to pulmonary embolism and other morbidities.

21.     This complaint is timely and properly filed with this Court. Venue and jurisdiction are proper in the State of Utah; however, this complaint is filed in the United States District Court, Southern District of Illinois into MDL No. 2100 pursuant to the Amended Case Management Order No. 9 to expedite its placement into MDL No. 2100 and to eliminate delays associated with transfer to the Southern District of Illinois from the United States District Court, Central District of Utah.

22.     The special and general damages and the value of the Plaintiff's injuries are in excess of $75,000 and in an amount to be proven at trial.

**FACTUAL ALLEGATIONS**

23.     The Plaintiffs' daughter, the Decedent, was a healthy person born

1/18/1977.  She was prescribed and took the Defendants' drospirenone products. While under the treatment of her physician, she and her treating physician received labeling and literature that failed to disclose that the Defendants' drospirenone products  cause pulmonary embolism and other morbidities, as established by scientific evidence.  Said labeling, warning and literature also failed to adequately and appropriately disclose to consumers and treating physicians that the Defendants' drospirenone products were related and caused pulmonary embolism and death from pulmonary embolism and that other morbidities could occur.  This labeling also did not properly instruct the Plaintiff or her treating physician as to the safe use of these products.

24.     The instructions to the physician and public advertisements designed to solicit the general public and to young women and their health care providers, should have included but did not adequate warnings regarding the Defendants' drospirenone products and related pulmonary embolism and resulting death and other morbidities  that would have educated health care professionals and patients  to gain the necessary skills to evaluate and monitor patients for these side effects.

25.     As alleged herein, the warning provided to treating physicians via package inserts and product literature is defective for the following reasons, including without limitation the following:

(a) The Defendants'  product labeling did not warn of the fact that their drospirenone products are proven to cause pulmonary embolism  and other  morbidities;

(b)   The Defendants'   product labeling did not provide for a mandatory registry ensuring

adequate education and instruction of treating physicians;

(c)   The Defendants' product labeling at the time of prescription did not disclose that their

products  could cause pulmonary embolisms, and other morbidities may occur,

including death; and

(d)   The Defendants consistently and systematically undermined their

product labeling by stating to treating physicians through their market  representatives

that there was no scientific basis supporting a warning.

26.      Neither the Plaintiff nor her treating and prescribing physician would have

prescribed the Defendants' drospirenone products  if they had been properly and clearly

warned that the Defendants' products had affirmatively and substantively been proven to

cause pulmonary embolisms and other morbidities and had been instructed as to proper

and safe use.  Alternatively, if either the Plaintiff or her  treating physician had been told

of this established causal link or had been instructed as to the proper and safe use of the

Defendants' drug products, one or both could have prevented the Decedent's death by

taking steps to monitor the Plaintiff's condition, or have it monitored as appropriate by a

qualified professional, or more importantly to cease taking or never to have begun the

taking of the Defendants' product.

27.      On or about August 6, 2011, the Decedent died as a result of a pulmonary

embolism.  The Decedent had  no history of pulmonary embolism. The Decedent  had

been prescribed YASMIN (DROSPIRENONE) by her medical provider.  At times her pharmacy filled those prescriptions with all of the various Defendants' drospirenone products. The Defendants knew at the time of the Plaintiff's prescriptions for YASMIN (DROSPIRENONE) that pulmonary embolism and other morbidities including death were related to the use of the Defendants' drospirenone products.   Nevertheless, the Defendants failed to adequately warn physicians and users of their drospirenone products that those drugs cause pulmonary embolism and other morbidities,  in some people. These Defendants also failed to provide adequate instructions of physicians and users as to the safe and proper administration of their  drospirenone drug products.

28.     The Decedent's death was proximately caused by the Defendants' negligence in distributing a prescription drug having improper labeling in the stream of commerce.

## FIRST CAUSE OF ACTION
### (Negligence Against the BAYER DEFENDANTS)

29.      Plaintiffs  allege and incorporate into this Cause of Action each and every paragraph in this Complaint as though fully set forth in this Complaint.

30.     Upon information and belief, the BAYER DEFENDANTS manufactured unsafe pharmaceutical products, used substandard warnings and violated safety standards in its marketing, sale and distribution of YASMIN (DROSPIRENONE).

31.     Upon information and belief, proper safety precautions and safeguards would have imposed no undue financial or administrative burden on the BAYER DEFENDANTS.

12

32.    The Plaintiffs are informed and believe that the Defendants were negligent in all of the following particulars:

(a) In manufacturing a drug for consumption that BAYER DEFENDANTS knew or should have known caused pulmonary embolism and resulting death and other morbidities;

(b) In failing to adequately test the drug to determine whether or not the drug had dangerous propensities that would present a danger to persons taking YASMIN (DROSPIRENONE);

(c)    In failing to act on reports of pulmonary embolism and other morbidities including death occurring in connection with the use of the drug during the pre-marketing clinical trials and as adverse events occurring after approval of the drug;

(d) In failing to adequately warn the public in general and the Plaintiff  in particular, as well as the healthcare community and the Plaintiff's treating physicians, that YASMIN (DROSPIRENONE) causes pulmonary embolism and death  in certain individuals using the drug;

(e) In refusing to adopt a registry program for YASMIN (DROSPIRENONE)     to ensure proper education and instruction for treating physicians and other healthcare providers;

(f) In manufacturing a drug for consumption that BAYER DEFENDANTS knew or should have known scientifically causes pulmonary embolism and other morbidities including death in  YASMIN (DROSPIRENONE) patients;

(g) In failing to act on reports of pulmonary embolism and other morbidities including after approval of the drug;

(h) In marketing the drug to the public and to treating physicians in a manner that created the impression that YASMIN (DROSPIRENONE) was safe and   did not cause pulmonary embolism and other morbidities

(i) In failing to give adequate warnings of the hazards associated with their product;

(j) In failing to label their product properly and failing to provide adequate warnings and instructions about pulmonary embolism and other health   hazards of YASMIN (DROSPIRENONE) use;

(k) In promoting YASMIN (DROSPIRENONE) in ever-increasing numbers to treating physicians and patients without providing proper warnings and without adopting an appropriate program to register, prevent, and monitor and/or prevent pulmonary embolism and other morbidities including death and  adverse events;

(l) In undermining the warnings and instructions to physicians and consumers during marketing of the drug and in funding, relying upon, promoting, and distributing flawed studies for dissemination to the healthcare community that further detracted from said warnings and instructions;

 (m) In failing to instruct and train physicians in the appropriate uses and indications of their product to prevent or avoid known side effects such as pulmonary embolism;

14

(n) In manufacturing, labeling, marketing, promoting, and selling of a product that they either knew or should have known was unreasonably safe;

(o) In failing to prevent their sales agents from marketing YASMIN (DROSPIRENONE) to physicians and pharmacies as safe, although knowing that the drug was dangerous;

(p) In failing to exercise the degree of care and caution that a reasonable and prudent pharmaceutical entity would have exercised under the same and similar conditions;

(q) In failing to institute appropriate instructions, policies and procedures to prevent the type of injury suffered by the Plaintiff; and

(r) In failing to present relevant information in their labeling about the dangers presented by YASMIN (DROSPIRENONE) in a proper, clear and unambiguous manner and failing to provide consumers and prescribing physicians with adequate and comprehensible warnings about the dangers of using YASMIN (DROSPIRENONE) including pulmonary embolism and death and instructions for its safe and proper use.

33.    As a direct, proximate, and foreseeable result of the negligence of the BAYER DEFENDANTS, the Decedent developed pulmonary embolism and other morbidities and died. The BAYER DEFENDANTS are therefore liable to the Plaintiffs for the death of their daughter. It was this negligence which was the proximate cause of general and special damages suffered by Decedent and the Plaintiffs and caused the death of the Decedent. The negligence of the Defendants further caused the negligent infliction of emotional distress to the Decedent from the time of the negligence of the

15

Defendants until her death and caused medical costs and expenses from the time of the breach of the standard of care until her death.

34.     The negligence of Defendants  and their employees  was the actual and proximate cause of the Decedent's death.  The Plaintiffs, as heirs of the Decedent, assert their claim for the loss of the love, companionship and consortium with their mother and daughter.   The Defendants' negligence further proximately caused emotional distress and depression, and loss of enjoyment of life.  The Plaintiffs  have suffered damages in the past, continue to suffer them presently, and will continue to suffer them into the future including costs of all medical treatment and loss of love and companionship of their mother and daughter and the cost of funeral and burial expenses.

35.     As a further proximate result of the Defendants'  negligence, the Plaintiffs have incurred medical bills in the past, is continuing to incur medical bills, and funeral and burial expenses in an amount to be established at trial.

36.     As a further proximate result of Defendants' negligence, the Plaintiffs have endured pain and suffering in both body and mind in an amount to be established at trial.

37.     As a further proximate result of Defendants'  negligence, the Plaintiffs have suffered a loss of enjoyment of life.

38.   The negligence of the Defendants and their employees was the actual and proximate cause of the Decedent's death and the Plaintiff's damages both special and general.

39.     As a proximate cause of the Defendants' negligent conduct, Plaintiffs

suffered physical, emotional and psychological  injuries which have required medical

treatment in the past, continue to require medical  treatment, and will continue to require

medical treatment into the future.

40.     As a further proximate result of the Defendants'  negligence, each and all of

these damages will  continue into the future.

41.   The negligence of the Defendants and each of them and their agents and

employees was  the actual and proximate cause of  the Decedent's death and the

Plaintiffs' damages as herein above described. Had the Decedent  known that YASMIN

(DROSPIRENONE) was not safe and it had side effects related to pulmonary embolism

and other morbidities, the Decedent more likely than not would not have taken YASMIN

(DROSPIRENONE) and would have used other similar but safe products.

## SECOND  CAUSE OF ACTION

**(Negligence Against the Watson, Teva and Bar Defendants
as Generic Manufacturers for Failing to Timely and Properly Contact
the FDA  to Request  New Safety Information for its Product Warning Label)**

42.     The Plaintiffs' daughter, the Decedent, was a healthy person born

1/18/1977.  She was prescribed the brand name drug Yasmin by her medical providers,

but at times her pharmacy filled that prescription with the generic drugs  ZARAH

(DROSPIRENONE) and OCELLA  (DROSPIRENONE).

17

43.     While under the treatment of her physician, she and her treating physician and other health providers received improper labeling and literature that failed to disclose that ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) cause pulmonary embolism and other morbidities, as established by scientific evidence.

44.     Said labeling, warning and literature also failed to adequately and appropriately disclose to consumers and treating physicians that ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) caused pulmonary embolism and other morbidities including death.

45.     This labeling also did not properly instruct the Plaintiff or her treating physician and health care providers as to the safe use of the generic product.  Instructions to the physician and public advertisements designed to solicit the general  public, and in particular young women and their health care providers, should have included, but did not include,   adequate warnings regarding ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) related pulmonary embolism and other morbidities including death which  would have educated health care professionals and patients  to gain the necessary skills to evaluate and monitor ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) patients for these side effects.

46.     These Defendants had a duty to ensure the safety of their  products and to know whether or not their labels were  safe.

47.     These Defendants as generic drug manufacturers based the warning label for Zarah and Ocella on the warning label used by the Bayer Defendants for their products such as Yasmin and Yaz.

48.     The Bayer Defendants' brand label and the Defendants' generic name label were misbranded because they failed to give adequate warnings against the pulmonary embolism side effect. Such a warning was necessary for the protection of users of the brand and generic drug, including the Decedent.

49.     The Bayer Defendants' brand label for Yasmin and Yaz and the label for the Watson, Tev, and Bar Defendants' generic drug needed to be revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with their product, including pulmonary embolism and death from pulmonary embolism.

50.     The Defendants knew or should have known and had reasonable evidence to know that the label for the Defendants' generic drug needed to be revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with their product, including pulmonary embolism and death from pulmonary embolism.

51.     If a generic drug manufacturer like the Watson, Teva, and Bar Defendants believes new safety information should be added to a product's labeling, it should contact the Federal Drug Administration ("FDA"), and the FDA will determine whether the labeling for such generic drugs such as Zarah and Yasmin should be revised.

52.     It was the Watson, Teva, and Bar Defendants' duty to ask for FDA assistance in convincing the brand name manufacturers  including but not  limited to the Bayer Defendants  and their brand name product Yasmin and Yaz to adopt a stronger label because the brand name label was inadequate including but not limited to warnings regarding pulmonary embolism and resulting death.

53.     Both the Defendants as the generic manufacturer and as brand name manufacturers  knew of or should have known of and had access to reasonable evidence of an association  of a serious hazard, which is pulmonary embolism and death from pulmonary embolism, between their product and that hazard, and they knew or should have known that their label was misbranded.

54.     The Watson, Teva, and Bar Defendants failed timely and properly to ask the FDA for assistance in convincing the brand name manufacturers  including but not limited to the Bayer Defendants and their  brand name product Yasmin and Yaz to adopt a stronger label because the brand name label was inadequate including but not limited to warnings regarding pulmonary embolism.

55.     The Watson, Teva and Bar Defendants failed timely and properly to ask the brand name manufacturer  including but not limited to the Bayer Defendants to adopt a stronger label because the brand name label was inadequate including but not limited to warnings regarding pulmonary embolism and resulting death.

56.     It was the Watson, Teva and Bar Defendants' duty to do so in order  that all the labels for the brand drug and the label for the generic  drug manufacturers could have access to such a  stronger label which would include proper warnings including but not limited to warnings related to  pulmonary embolism and death related to pulmonary embolism.

57.     It is and has been the FDA's position that generic drug manufacturers such as the Watson, Teva and Bar Defendants have such a duty.

58.     At the time that the Watson, Teva and Bar Defendants as generic manufacturers   of   the   generic   ZARAH   (DROSPIRENONE)   and   OCELLA (DROSPIRENONE) and other drospirenone products copied the warning label from Yasmin or Yaz and at times thereafter, these  Defendants knew or should have known and been aware of or should have become aware of and had reasonable evidence to show that there were safety  problems in the warning label used by Yasmin and Yaz and the Bayer Defendants including pulmonary embolism and death related to pulmonary embolism.

59.     The Watson, Teva and Bar Defendants should have, but did not, ask the FDA to work toward strengthening the label that applied to both the generic Zarah and Ocella and the brand name equivalent drug, Yasmin or Yaz as it related to pulmonary embolism.

60.     The Watson, Teva and Bar Defendants as generic manufacturers of Zarah and Ocella, generic drugs for the brand name Yasmin or Yaz, had a duty to the Decedent

to contact the FDA because they knew or should have known and had reasonable evidence to believe that new safety information should be added to a product's labeling for both the brand name Yasmin and the generic drug Zarah and Ocella, including but not limited to pulmonary embolism and resulting death.

61.     Had the Watson, Teva and Bar Defendants contacted the FDA with the reasonable knowledge that they had that new safety information should be added to the product labeling for both the brand name Yasmin or Yaz and the generic drug Zarah and Ocella and other generic manufacturers, it is more likely than not that the label would have been changed and both the brand name Yasmin and Yaz and the generic drug Zarah and Ocella label would have been changed to properly warn the Decedent and her medical providers of the dangerous side of the drugs relating pulmonary embolism and death from pulmonary embolism.

62.     It is more likely than not that the brand name warning label's requirement would have been changed and therefore the Watson, Teva and Bar Defendants' warning label's requirements would have been changed to adequately warn against pulmonary embolism.

63.     Had the Watson, Teva and Bar Defendants' label been changed to accurately warn of the dangers of pulmonary embolism then the Decedent would not have died.

64.     As alleged herein, the warning provided to treating physicians via package inserts and product literature for the brand name label Yasmin and Yaz and for the generic drugs Zarah and Ocella which were used by the Defendants were defective for the following reasons, including without limitation the following:

(a)   The brand name drug Yasmin and Yaz' label as well as the Defendants' generic drug Zara and Ocella's label did not warn of the fact that its brand name and generic name product is  proven to cause pulmonary embolism and other  morbidities including death;

(b) The Defendants' product labeling did not provide for a mandatory registry ensuring adequate education and instruction of treating physicians;

(c)    The Defendants' product labeling at the time of prescription did not  disclose that Yasmin and Yaz as well as the Defendants generic drug Zarah and Ocella could  cause pulmonary  embolisms, and other morbidities may occur including death; and

(d)   The brand name manufacturers Yasmin  and Yaz'   as well as the Defendants' consistently and systematically undermined their product labeling by stating to treating physicians  through their market   representatives that there was  no  scientific  basis supporting such a warning.

65.     Neither the Decedent  nor her treating and prescribing physician would have initiated ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) therapy if they had been  properly  and  clearly  warned  that  ZARAH  (DROSPIRENONE)   and  OCELLA (DROSPIRENONE) had affirmatively and substantively been proven to cause pulmonary

embolisms and other morbidities and had been instructed as to proper and safe use. Alternatively, if either the Decedent or her  treating physician had been told of this established causal link or had been instructed as to the proper and safe use of the drug, one or both could have prevented the Decedent's death by taking steps to monitor the Decedent's condition, or have it monitored as appropriate by a qualified professional, or more importantly to cease taking or never to have begun the taking of Zarah and Ocella.

66.     On or about August 6, 2011, the Decedent died as a result of a pulmonary embolism.  At that point, the Decedent had been prescribed Yasmin and Yaz by her health care providers. The pharmacy filling that prescription at times also dispensed ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) to the Decedent.  The Decedent had  no history of pulmonary embolism. The Defendants knew or should have known and had reasonable evidence to believe that at the time of the Plaintiff's prescriptions for Yasmin and her taking Yasmin  and at the times when ZARAH (DROSPIRENONE) and OCELLA  (DROSPIRENONE) was used to fill the Yasmin prescription that pulmonary embolism and other morbidities were related to the use of ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE).  Nevertheless, the Watson, Teva and Bar Defendants failed to timely and properly contact the FDA to request  new safety information for their  product warning label and failed timely to take steps to request the brand name manufacturers  to change its label by the FDA's changes-being-effected (CBE) or by the use of Dear Doctor letters.

24

67.     The Defendants knew that their label failed to adequately warn physicians and users of ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) that the drug causes pulmonary embolism and other morbidities, in some people. Nevertheless, the Defendants failed to timely and properly contact the FDA to request new safety information for its product warning label and failed timely to take steps to request the FDA and the Bayer companies to change the label. As a result, the FDA did not have sufficient information to investigate the need for a new warning and the brand and generic manufacturers' label continued to fail to provide adequate labeling and instructions of physicians and users as to the safe and proper administration of the drug.

68.     The Plaintiffs' daughter's, the Decedent's, death was proximately caused by the Watson, Teva and Bar Defendants' negligence in failing to take steps to request the FDA to change the warning label to include warnings related to pulmonary embolism resulting in the Brand manufacturer, the Bayer Defendants, failing timely to take steps to request the brand name manufacturers to change its label by the FDA's changes-being-effected (CBE) or by the use of Dear Doctor letters, and by the Defendants distributing a prescription drug having improper labeling in the stream of commerce.

69.     The Watson, Teva and Bar Defendants' negligence was the proximate cause of a drug being sold by the brand name manufacturer and other generic drug manufacturers with an inadequate warning label, and was the proximate cause of the generic makers of YASMIN and YAZ generic drugs to continue to sell a drug with an

inadequate warning label resulting injury and persons like the Decedent who not only took the brand version of YASMIN but also generic versions of the drug.

70.     As a direct, proximate, and foreseeable result of the negligence of the Defendants as described herein, the Decedent developed pulmonary embolism and other morbidities and died. The Defendants  are therefore liable to the Plaintiffs for the death of their daughter. It was this negligence which was the proximate cause of general and special damages suffered by Decedent and the Plaintiffs and caused the death of the Decedent.

71.     The negligence of the Defendants further caused the negligent infliction of emotional distress to the Decedent  from the time of the negligence of the Defendants until her death and caused medical costs and expenses from the time of the breach of the standard of care until her death.

72.     The negligence of Defendants  and their employees  was the actual and proximate cause of the Decedent's death.  The Plaintiffs, as heirs of the Decedent, assert their claim for the loss of the love, companionship and consortium with their mother and daughter.   The Defendants' negligence further proximately caused emotional distress and depression, and loss of enjoyment of life.  The Plaintiffs  have suffered damages in the past, continue to suffer them presently, and will continue to suffer them into the future including costs of all medical treatment and loss of love and companionship of their mother and daughter and the cost of funeral and burial expenses.

73.     As a further proximate result of the Defendants' negligence, the Plaintiffs have incurred medical bills in the past,  continue to incur medical bills, and funeral and burial expenses in an amount to be established at trial.

74.     As a further proximate result of the Defendants' negligence, the Plaintiffs have been unable to go about their business as they could prior to the Decedent's death, and they have  sustained economic loss in the past, are sustaining economic loss in the present, and will sustain economic loss into the future including the economic support of the Decedent to the Plaintiffs in the past, currently, and into the future.

75.     As a further proximate result of Defendants' negligence, the Plaintiffs  have suffered a loss of enjoyment of life.

76.   The negligence of the Defendants and their employees was the actual and proximate cause of Decedent's injuries and death and the Plaintiff's general and special damages as alleged herein.

77.     As a proximate cause of the Defendants' negligent conduct, Plaintiffs  suffered physical, emotional and psychological  injuries which have required medical and treatment in the past, continue to require medical  treatment, and will continue to require medical treatment into the future.

78.     As a further proximate result of the Defendants' negligence, each and all of these damages will  continue into the future.

79.    The negligence of the Defendants' and each of them and their agents and employees were the actual and proximate cause of the Decedent's injuries and death and the Plaintiffs' special and general damages as herein above described. Had the Decedent known that Zarah and/or Ocella were not safe and had side effects related to pulmonary embolism and other morbidities including death, the Decedent would not have taken Zarah or Ocella.

### THIRD CAUSE OF ACTION

**(Further Negligence Against the BAYER DEFENDANTS for Failure to Pursue and Obtain Adequate Label Warning Resulting in Generic Manufacturers Distributing Generic Yasmin with Inadequate Warning Labels)**

80.    Plaintiffs allege and incorporate into this Cause of Action each and every paragraph in this Complaint as though fully set forth in this Complaint.

81.     In addition to the negligence previously described against the Bayer Defendants, these Defendants further were negligent in other ways as described herein.

82.    In failing timely to alter the labeling of YASMIN to warn of the dangers of pulmonary embolism and death; in failing timely to in any meaningful way timely approach the FDA about changing the label to adequately warn; in failing timely to use the FDA's "changes-being-effected" (CBE) process which permitted drug manufacturers' like the Defendants, without preapproval, to strengthen warning labels; in failing timely to add or strengthen a warning label timely; and in failing timely to send "Dear Doctor" letters

warning of the pulmonary embolism and death,   the Bayer Defendants'  allowed generic drug makers of  drospirenone products which were the same drug as YASMIN but marketed under generic names, to propagate an inadequate warning label. In doing so, the Bayer Defendants negligently caused  a dangerous drug without an adequate warning as to pulmonary embolism and resulting death to not only be sold by the Bayer Defendants, as brand name manufacturers,  but also generic drug manufacturers to sell the generic version of YASMIN and YAZ and other similar products with an inadequate warning label.

83.     The Bayer Defendants' negligence allowed the generic makers of YASMIN to continue to sell a drug with an inadequate warning label as to pulmonary embolism and resulting death resulting in  injury and death to persons taking not only the brand version of YASMIN but also the  generic versions of the drug and similar drospirenone-ethinyl estradiol-like products.

84.     The Bayer Defendants could have, and should have, but timely did not use the FDA's "changes-being-effected" (CBE) process which permitted drug manufacturers like the Bayer Defendants, without preapproval, to add or strengthen a warning label. The Bayer Defendants had a duty and owed a duty to the Decedent to use the CBE process timely to add or strengthen the warning label for YASMIN or any other similar product and to warn  of the dangers of pulmonary embolism and death. The Bayer Defendants breached that duty by failing timely and adequately to use the CBE process to add or

29

strengthen the warning label for YASMIN which would have resulted in the warning label for similar generic drospirenone  products  to warn of the dangers of pulmonary embolism and resulting death.

85.    The Bayer Defendants could have, and should have, but did not timely and adequately send out "Dear Doctor" letters providing additional warnings to prescribing physicians and other healthcare professionals warning those persons of the risk of pulmonary embolism and resulting death from the use of Bayer Defendants' drug YASMIN and any other similar drug. The Bayer Defendants had a duty and owed a duty to the Decedent  to use the "Dear Doctor" process to add or strengthen the warning label for YASMIN and drospirenone products  to warn of the dangers of pulmonary embolism and death.  The Defendants breached that duty by failing to use the  "Dear Doctor" letters to prove timely and additional warnings to prescribing physicians and other healthcare professionals warning those persons of the risk of pulmonary embolism and resulting death from the use of the Bayer Defendants' brand drug which would have resulted in the warning label for similar generic drospirenone products  to warn of the dangers of pulmonary embolism and resulting death.

86.    Federal law prevented the makers of generic versions of YASMIN from independently changing and strengthening their generic drugs' safety labels. Had the Bayer Defendants timely  changed and strengthened  their label warning as to pulmonary embolism and resulting death this would have resulted in the warning label for similar

generic drospirenone  products  to be strengthened and to be changed to warn of the dangers of pulmonary embolism and resulting death.

87.    The Bayer Defendants' negligence in failing timely to alter the labeling of YASMIN  to discuss the dangers of pulmonary embolism and resulting death; in failing to timely approach the FDA about changing the label to adequately warn or to use the FDA's "changes-being-effected" (CBE) process which permitted drug manufacturers like the Defendants, without preapproval, to strengthen the warning label for Yasmin; and in failing to  timely send "Dear Doctor" letters, caused and allowed generic drug makers of drospirenone products which were the same drug as YASMIN but marketed under generic names, to distribute generic versions of Yamsin without an adequate warning which was the proximate cause of the Decedent's death.

88.    The Bayer Defendants' negligence was the proximate cause of a drug being sold by generic drug manufacturers with an inadequate warning label as to pulmonary embolism and resulting death, and was the proximate cause of  the generic drug makers of drospirenone  continuing  to sell a drug with an inadequate warning label as to pulmonary embolism and resulting death resulting in injury and death to persons like the Decedent who would not have taken  either the brand version of YASMIN or the  generic versions of the drug.

89.     As a further proximate result of the Bayer Defendants' negligence, the Plaintiffs have incurred medical bills in the past, are continuing to incur medical bills, and will continue to incur medical bills into the future in an amount to be established at trial.

90.     As a further proximate result of Bayer Defendants' negligence, the Plaintiffs have endured pain and suffering in both body and mind in an amount to be established at trial.

91.     As a direct, proximate, and foreseeable result of the negligence of the Bayer Defendants as described herein, the Decedent developed pulmonary embolism and other morbidities and died. The Bayer Defendants are therefore liable to the Plaintiffs for the death of their daughter. It was this negligence which was the proximate cause of general and special damages suffered by Decedent and the Plaintiffs and caused the death of the Decedent. The negligence of the Defendants further caused the negligent infliction of emotional distress to the Decedent from the time of the negligence of the Defendants until her death and caused medical costs and expenses from the time of the breach of the standard of care until her death.

92.     The negligence of Bayer Defendants and their employees was the actual and proximate cause of the Decedent's death. The Plaintiffs, as heirs of the Decedent, assert their claim for the loss of the love, companionship and consortium with their mother and daughter. The Defendants' negligence further proximately caused emotional distress and depression, and loss of enjoyment of life. The Plaintiffs have suffered damages in the

past, continue to suffer them presently, and will continue to suffer them into the future including costs of all medical treatment and loss of love and companionship of their mother and daughter and the cost of funeral and burial expenses.

93.     As a further proximate result of the Bayer Defendants' negligence, the Plaintiffs have incurred medical bills in the past, is continuing to incur medical bills, and funeral and burial expenses in an amount to be established at trial.

94.     As a further proximate result of the Bayer Defendants' negligence, the Plaintiffs have been unable to go about their business as they could prior to the Decedent's death, and they have sustained economic loss in the past, are sustaining economic loss in the present, and will sustain economic loss into the future.

95.     As a further proximate result of Bayer Defendants' negligence, the Plaintiffs have suffered a loss of enjoyment of life.

96.     The negligence of the Defendants and their employees was the actual and proximate cause of Decedent's injuries and death and the Plaintiff's general and special damages as alleged herein.

97.     As a proximate cause of the Defendants' negligent conduct, Plaintiffs suffered physical, emotional and psychological injuries which have required medical and treatment in the past, continue to require medical treatment, and will continue to require medical treatment into the future.

98.     As a further proximate result of the Defendants' negligence, each and all of these damages will continue into the future.

99.     The negligence of the Bayer Defendants' and each of them and their agents and employees were the actual and proximate cause of the Decedent's injuries and death and the Plaintiffs' special and general damages as herein above described. Had the Decedent known that the generic versions of YASMIN (DROSPIRENONE) were not safe and had side effects related to pulmonary embolism and other morbidities including death, the Decedent would not have taken YASMIN (DROSPIRENONE) or the similar generic drospirenone like products.

## FOURTH CAUSE OF ACTION

### (Further Negligence Against the Watson, Teva, and Bar Defendants)

100.    Plaintiffs allege and incorporate into this Cause of Action each and every paragraph in this Complaint as though fully set forth in this Complaint.

101.    In addition to the negligence previously described against the Watson, Teva and Bar Defendants, these Defendants further were negligent in other ways as described herein.

102.    Upon information and belief, The Defendants manufactured unsafe pharmaceutical products, used substandard warnings and violated safety standards in their

marketing, sale and distribution of ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE).

103.    Upon information and belief, proper safety precautions and safeguards would have imposed no undue financial or administrative burden on the Defendants.

104.    The Plaintiffs are informed and believe that the Defendants were negligent in all of the following particulars:

(a)  In manufacturing a drug for consumption the Defendants knew or should have known that  ZARAH (DROSPIRENONE) and OCELLA  (DROSPIRENONE) caused pulmonary embolism and other morbidities including death;

(b) In failing to adequately test the drug to determine whether or not the drug had dangerous propensities that would present a danger to persons taking ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE);

(c)    In failing to act on reports of pulmonary embolism and other morbidities occurring in connection with the use of the drug during the pre-marketing clinical trials and as adverse events occurring after approval of the drug including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(d) In failing to adequately warn the public in general and the Plaintiff  in particular, as well as the healthcare community and the Plaintiff's treating physicians and the FDA and the

35

brand name manufacturers,  that ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) cause pulmonary embolism and death from pulmonary embolism and other morbidities   in certain individuals using the drug;

(e)  In refusing to adopt a registry program for ZARAH (DROSPIRENONE) and OCELLA  (DROSPIRENONE) to ensure proper education and instruction for treating physicians and other  healthcare providers;

(f) In manufacturing a drug for consumption that the Defendants knew or should have known scientifically causes pulmonary embolism and other morbidities in  ZARAH (DROSPIRENONE) and OCELLA  (DROSPIRENONE) patients including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(g) In failing to act on reports of pulmonary embolism and other morbidities  after approval of the drug, including notifying the FDA and requesting a label change including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(h) In marketing the drug to the public and to treating physicians in a manner that created the impression that ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) were safe and   did not cause pulmonary embolism and other morbidities

36

(i) In failing to give adequate warnings of the hazards associated with their product and failing to ask the FDA to change the inadequate warnings listed on the label for pulmonary embolism and related deaths including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(j) In failing to label their product properly and failing to provide adequate warnings and instructions about pulmonary embolism and other health   hazards of ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) use and in failing to attempt to get the FDA to change those inadequate warnings including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(k) In promoting ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE-ETHINYL) in ever increasing numbers to treating physicians and patients without providing proper warnings and without adopting an appropriate program to register, prevent, and monitor and/or prevent pulmonary embolism and other morbidities and  adverse events including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

37

(l) In undermining the warnings and instructions to physicians and consumers during marketing of the drug and in funding, relying upon, promoting, and distributing flawed studies for dissemination to the healthcare community that further detracted from said warnings and instructions including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(m) In failing to instruct and train physicians in the appropriate uses and indications of their product to prevent or avoid known side effects such as pulmonary embolism;

(n) In manufacturing, labeling, marketing, promoting, and selling of a product that they either knew or should have known was unreasonably safe and in failing to asking the FDA to change that labeling including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(o) In failing to prevent their sales agents from marketing ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) to physicians and pharmacies as safe, although knowing that the drug was dangerous;

(p) In failing to exercise the degree of care and caution that a reasonable and prudent pharmaceutical entity would have exercised under the same and similar conditions including but not limited to asking the FDA to change the labeling as to the pulmonary

embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(q) In failing to institute appropriate instructions, policies and procedures to prevent the type of injury suffered by the Plaintiff including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects; and

(r) In failing to present relevant information in their labeling about the dangers presented by ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) in a proper, clear and unambiguous manner and failing to provide consumers and prescribing physicians with adequate and comprehensible warnings about the dangers of using ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) and instructions for its safe and proper use, including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects; and

(s) In failing, at the time that the Defendants as generic manufacturers of the generic ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) copied the formula and began manufacturing the brand name Yasmin or Yaz and copied for warning label from Yasmin or Yaz and at times thereafter, the Defendants knew or should have known and been aware of or should have become aware of safely  problems in the product itself and

in the warning label used by Yasmin and Yaz and the Bayer companies including pulmonary embolism and death. The Defendants should have, but did not, ask the FDA to work towards strengthening the label that applied to both the generic Zarah and Ocella and should have but did not ask the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects.

105.   As a direct, proximate, and foreseeable result of the negligence of the Defendants, the Decedent developed pulmonary embolism and other morbidities and died. The Defendants are therefore liable to the Plaintiffs for the death of their daughter. It was this negligence which was the proximate cause of general and special damages suffered by Decedent and the Plaintiffs and caused the death of the Decedent. The negligence of the Defendants further caused the negligent infliction of emotional distress to the Decedent from the time of the negligence of the Defendants until her death and caused medical costs and expenses from the time of the breach of the standard of care until her death.

106.   The negligence of Defendants  and their employees  was the actual and proximate cause of the Decedent's death.  The Plaintiffs, as heirs of the Decedent, assert their claim for the loss of the love, companionship and consortium with their mother and daughter.   The Defendants' negligence further proximately caused emotional distress and depression, and loss of enjoyment of life.  The Plaintiffs  have suffered damages in the past, continue to suffer them presently, and will continue to suffer them into the future

including costs of all medical treatment and loss of love and companionship of their mother and daughter and the cost of funeral and burial expenses.

107.    As a further proximate result of the Defendants' negligence, the Plaintiffs have incurred medical bills in the past, is continuing to incur medical bills, and funeral and burial expenses in an amount to be established at trial.

108.    As a further proximate result of Defendants' negligence, the Plaintiffs have endured pain and suffering in both body and mind in an amount to be established at trial.

109.    As a further proximate result of Defendants' negligence, the Plaintiffs have suffered a loss of enjoyment of life.

110.    The negligence of the Defendants and their employees was the actual and proximate cause of the Decedent's death and the Plaintiff's damages both special and general.

111.    As a proximate cause of the Defendants' negligent conduct, Plaintiffs suffered physical, emotional and psychological injuries which have required medical and treatment in the past, continue to require medical treatment, and will continue to require medical treatment into the future.

112.    As a further proximate result of the Defendants' negligence, each and all of these damages will continue into the future.

113.   The negligence of the Defendants and each of them and their agents and employees were the actual and proximate cause of  the Decedent's death and the Plaintiffs' damages as herein above described. Had the Decedent  known that ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) was not safe and it had side effects related to pulmonary embolism and other morbidities, the Decedent more likely than not would not have taken ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) and would have used other similar but safe products.

### FIFTH  CAUSE OF ACTION
### (Strict Liability Against BAYER DEFENDANTS)

114.    Plaintiffs  allege and incorporate into this Cause of Action each and every paragraph in this Complaint as though fully set forth in this Complaint.

115.   The BAYER DEFENDANTS were and are sellers engaged in the business of selling the product which is the subject matter of this Complaint, to wit:  YASMIN (DROSPIRENONE).

116.   The product was expected to reach and did reach the user or consumer without substantial changes in the condition in which it was sold.

117.   The product when sold by the BAYER DEFENDANTS was in a defective condition, as a result of improper labeling to treating physicians and consumers that failed to warn in the following respects:

(a) In manufacturing a drug for consumption that the BAYER DEFENDANTS knew or should have known caused pulmonary embolism and resulting  death and other morbidities;

(b) In failing to adequately test the drug to determine whether or not the drug had dangerous propensities or for whom it would present a danger;

(c)   In failing to act on reports of pulmonary embolism and other morbidities occurring in connection with the use of the drug during the pre- marketing clinical  trials and as adverse events occurring after approval of the drug;

(d)   In failing to adequately warn the public in general and the Decedent  in particular, as well as the healthcare community and the Decedent's  treating physicians, that YASMIN (DROSPIRENONE) causes pulmonary embolism and resulting death  in certain individuals using the drug;

(e) In refusing to adopt a registry program for YASMIN (DROSPIRENONE) to ensure proper education and instruction for treating physicians and other healthcare providers;

(f) In manufacturing a drug for consumption that the BAYER DEFENDANTS knew or should have known scientifically causes pulmonary embolism and other morbidities  in YASMIN (DROSPIRENONE) patients;

(h) In failing to act on reports of pulmonary embolism  and other morbidities  after approval of the drug;

43

(i) In marketing the drug to the public and to treating physicians in a manner that created the impression that YASMIN (DROSPIRENONE) did not cause pulmonary embolism and other morbidities and that any reports were a coincidence and not a matter of scientific causation;

(j) In failing to give adequate warnings of the hazards associated with their product;

(k) In failing to label their product properly and failing to provide adequate warnings and instructions about pulmonary embolism and other morbidities  hazards of YASMIN (DROSPIRENONE) use;

(l) In promoting YASMIN (DROSPIRENONE) in ever increasing numbers to treating physicians and patients without providing proper warnings and without adopting an appropriate program to register, prevent, and monitor and/or prevent heart disease including pulmonary embolism  and other morbidities and  adverse events;

(m) In undermining the warnings and instructions to physicians and consumers during marketing of the drug and in funding, relying upon, promoting, and distributing flawed studies for dissemination to the healthcare community that further detracted from said warnings and instructions;

(n) In failing to instruct and train physicians in the appropriate uses and indications of their product to prevent or avoid known side effects such as pulmonary embolism and other morbidities;

(o) In manufacturing, labeling, marketing, promoting, and selling of a product that they either knew or should have known was unreasonably safe;

(p) In failing to prevent their sales agents from marketing YASMIN (DROSPIRENONE) to physicians and pharmacies as safe, although knowing that the drug was dangerous;

(q) In failing to exercise the degree of care and caution that a reasonable and prudent pharmaceutical entity would have exercised under the same and similar conditions;

(r)   In failing to institute appropriate instructions, policies and procedures to prevent the type of injury suffered by the Decedent; and

(s) In failing to present relevant information in their labeling about the dangers presented by YASMIN (DROSPIRENONE) in a proper, clear and unambiguous manner and failing to provide consumers and prescribing physicians with adequate and comprehensible warnings about the dangers of using YASMIN (DROSPIRENONE) and instructions for its safe and proper use.

118.   The product when purchased by Decedent  was in a defective condition, as a result of improper labeling to consumers that failed to warn in the following respects:

(a)   In failing to adequately warn the public in general and the Decedent  in particular that YASMIN (DROSPIRENONE) causes pulmonary embolism and other morbidities  in certain individuals using the drug;

45

(b)     In failing to give adequate warnings of the hazard associated with YASMIN (DROSPIRENONE);

(c)     In failing to present relevant information about the dangers presented by YASMIN (DROSPIRENONE) and the proper, clear and unambiguous manner in failing to provide consumers with adequate and comprehensible warnings about the dangers of using YASMIN (DROSPIRENONE) and instructions for its safe and proper use; and

119.   The Decedent  was within the scope of persons who would use and have used the product since she was prescribed YASMIN related to her being a woman.

120.   As a direct, proximate, and foreseeable result of these acts by  the Bayer Defendants, the Decedent  suffered pulmonary embolism and resulting death  and other morbidities.   The Bayer Defendants are strictly liable to the Plaintiff for injury to the Decedent and for the damages suffered by the Plaintiffs.

121.   As a direct, proximate, and foreseeable result of the acts of the Bayer Defendants, the Decedent developed pulmonary embolism and other morbidities and died. The Bayer Defendants are therefore liable to the Plaintiffs for the death of their daughter. It was these acts  which was the proximate cause of general and special damages suffered by Decedent and the Plaintiffs and caused the death of the Decedent. The acts of the Defendants further caused the negligent infliction of emotional distress to the Decedent

from the time of the negligence of the Defendants until her death and caused medical costs and expenses from the time of the breach of the standard of care until her death.

122.    The negligence of Defendants  and their employees  was the actual and proximate cause of the Decedent's death.  The Plaintiffs, as heirs of the Decedent, assert their claim for the loss of the love, companionship and consortium with their mother and daughter.    The Defendants' acts further proximately caused emotional distress and depression, and loss of enjoyment of life.  The Plaintiffs  have suffered damages in the past, continue to suffer them presently, and will continue to suffer them into the future including costs of all medical treatment and loss of love and companionship of their mother and daughter and the cost of funeral and burial expenses.

123.      As a further proximate result of the Defendants' acts, the Plaintiffs  have incurred medical bills in the past, are continuing to incur medical bills, and funeral and burial expenses in an amount to be established at trial.

124.    As a further proximate result of Defendants' acts, the Plaintiffs have endured pain and suffering in both body and mind in an amount to be established at trial.

125.      As a further proximate result of Defendants'  negligence, the Plaintiffs have suffered a loss of enjoyment of life.

126.    The negligence of the Defendants and their employees was the actual and proximate cause of the Decedent's death and the Plaintiff's damages both special and general.

47

127.    As a further proximate result of the Defendants' conduct, the Plaintiffs have sustained economic loss in the past, is sustaining economic loss in the present, and will sustain economic loss into the future.

128.    As a further proximate result of Defendants' conduct, the Plaintiffs have suffered a loss of enjoyment of life.

129.    The conduct as described herein of the Defendants and their employees was the actual and proximate cause of Decedent's death.

130.    As a proximate cause of the Defendants' conduct, Plaintiffs suffered physical, emotional and psychological injuries which have required medical and treatment in the past, continue to require medical treatment, and will continue to require medical treatment into the future.

131.    As a further proximate result of the Defendants' negligence, each and all of these damages will continue into the future.

132.    The conduct and negligence of the Defendants' and each of them and their agents and employees were the actual and proximate cause of the Plaintiff's injuries as herein above described. Had the Decedent known that YASMIN (DROSPIRENONE) was not safe and it had side effects of related to pulmonary and other such morbidities, the Decedent would not have taken YASMIN (DROSPIRENONE) and would have used other and safer products.

48

**SIXTH  CAUSE OF ACTION**

**(Strict Liability Against the Watson, Teva and Bar Defendants)**

133.     Plaintiffs  allege and incorporate into this Cause of Action each and every paragraph in this Complaint as though fully set forth in this Complaint.

134.     The Watson, Teva and Bar Defendants were and are sellers engaged in the business of selling the product  which is  the subject  matter of  this Complaint, to  wit: ZARAH (DROSPIRENONE) and OCELLA  (DROSPIRENONE).

135.     The product was expected to reach and did reach the user or consumer without substantial changes in the condition in which it was sold.

136.     The product when sold by the Defendants was in a defective condition, as a result of improper labeling to treating physicians and consumers that failed to warn in the following respects:

(a)   In manufacturing a drug for consumption that the Defendants knew  or should have known caused pulmonary embolism and resulting death and other morbidities;

(b)  In failing to adequately test the drug to determine whether or not the drug had dangerous propensities or for whom it would present a danger including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

49

(c)  In failing to act on reports of pulmonary embolism and other morbidities occurring in connection with the use of the drug during the pre- marketing clinical  trials and as adverse events occurring after approval of the  drug,  including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers  through  the  CBE  or  Dear  Doctor  process  to  warn  of  the  pulmonary embolism side effects.

(d)  In failing to adequately warn the public in general and the Decedent  in particular, as well as the healthcare community and the Decedent's  treating physicians, that ZARAH (DROSPIRENONE)  and OCELLA  (DROSPIRENONE) causes pulmonary embolism  in certain individuals using the drug including but not limited to asking the FDA to change the labeling  as  to  the  pulmonary  embolism  warnings  and  asking  the  brand  name manufacturers  through  the  CBE  or  Dear  Doctor  process  to  warn  of  the  pulmonary embolism side effects;

(e) In refusing to adopt a registry program for ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) to ensure proper education and instruction for treating physicians and other  healthcare  providers,  including  but  not  limited  to  asking  the  FDA  to  change  the labeling  as  to  the  pulmonary  embolism  warnings  and  asking  the  brand  name manufacturers  through  the  CBE  or  Dear  Doctor  process  to  warn  of  the  pulmonary embolism side effects;

(f) In manufacturing a drug for consumption that the Defendants knew or should have known scientifically causes pulmonary embolism and other morbidities in ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) patients and then failing to take appropriate actions, including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(h) In failing to act on reports of pulmonary embolism and other morbidities after approval of the drug and then failing to take appropriate actions, including, but not limited to, failing to take appropriate actions including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(i) In marketing the drug to the public and to treating physicians in a manner that created the impression that ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) did not cause pulmonary embolism and other morbidities and that any reports were a coincidence and not a matter of scientific causation and failing to take appropriate actions including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(j)    In failing to give adequate warnings of the hazards associated with their product including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(k)    In failing to label their product properly and failing to provide adequate warnings and instructions about pulmonary embolism and other morbidities  hazards of ZARAH (DROSPIRENONE) and OCELLA  (DROSPIRENONE) use and taking further appropriate actions including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects.

(l) In promoting ZARAH (DROSPIRENONE) and OCELLA  (DROSPIRENONE) in ever increasing numbers to treating physicians and patients without providing proper warnings and without adopting an appropriate program to register, prevent, and monitor and/or prevent pulmonary embolism  and other morbidities and  adverse events and taking further appropriate actions  including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(m) In undermining the warnings and instructions to physicians and consumers during marketing of the drug and in funding, relying upon, promoting, and distributing flawed studies for dissemination to the healthcare community that further detracted from said warnings and instructions and taking further appropriate actions including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(n)  In failing to instruct and train physicians in the appropriate uses and indications of their product to prevent or avoid known side effects such as pulmonary embolism and other morbidities and taking further appropriate actions including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(o) In manufacturing, labeling, marketing, promoting, and selling of a product that they either knew or should have known was unreasonably safe and then failing to take appropriate actions, including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(p)  In failing to prevent their sales agents from marketing ZARAH (DROSPIRENONE)

and OCELLA  (DROSPIRENONE)  to physicians and pharmacies as safe, although

knowing that the drug was dangerous  and then failing to take further appropriate

actions, including but not limited to asking the FDA to change the labeling as to the

pulmonary embolism warnings and asking the brand name manufacturers through the

CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(q) In failing to exercise the degree of care and caution that a reasonable and prudent

pharmaceutical entity would have exercised under the same and similar conditions and

failing to take appropriate actions  including but not limited to asking the FDA to change

the labeling as to the pulmonary embolism warnings and asking the brand name

manufacturers through the CBE or Dear Doctor process to warn of the pulmonary

embolism side effects;

(r)   In failing to institute appropriate instructions, policies and procedures to

prevent the type of injury suffered by the Decedent and take further appropriate actions

including but not limited to asking the FDA to change the labeling as to the pulmonary

embolism warnings and asking the brand name manufacturers through the CBE or

Dear Doctor process to warn of the pulmonary embolism side effects; and

(s) In failing to present relevant information in their labeling about the dangers

presented by ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) in a

proper, clear and unambiguous manner and failing to provide consumers and

54

prescribing physicians with adequate and comprehensible warnings about the dangers of using ZARAH (DROSPIRENONE) and OCELLA(DROSPIRENONE) and instructions for its safe and proper use and then failing to take further appropriate actions, including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(t) In failing, at the time that the Defendants as generic manufacturers of the generic ZARAH and OCELLA (DROSPIRENONE-ETHINYL) copied the formula and began manufacturing the generic brand of the brand name Yasmin or Yaz and copied for their own warning label the  warning label from Yasmin or Yaz and at times thereafter and then failing to take further appropriate actions, including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects. When  the Defendants failed to do this, they knew or should have known and been aware of or should have become aware of safely problems in the product itself and in the warning label used by Yasmin and Yaz and the Bayer companies including pulmonary embolism and death. The Defendants should have, but did not, ask the FDA to work towards strengthening the label that applied to both the generic Zarah and Ocella and the brand name equivalent drug, Yasmin or Yaz

as it related to pulmonary embolism  and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects.

137.   The product when purchased by Plaintiff was in a defective condition, as a result of improper labeling to consumers that failed to warn in the following respects:

(a)  In failing to adequately warn the public in general and the Decedent  in particular that ZARAH  (DROSPIRENONE)  and  OCELLA  (DROSPIRENONE)  causes  pulmonary embolism  and other morbidities  in certain individuals using the drug including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(b)  In failing to give adequate warnings of the hazard associated with ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) and then taking appropriate actions including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects;

(c)    In failing to present relevant information about the dangers presented by ZARAH (DROSPIRENONE)  and  OCELLA  (DROSPIRENONE)  and  the  proper,  clear  and unambiguous manner in failing to provide consumers with adequate and comprehensible warnings  about  the  dangers  of  using  ZARAH  (DROSPIRENONE)  and   OCELLA (DROSPIRENONE) and instructions for its safe and proper use and then taking further

appropriate action including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects.

138.   The Decedent was within the scope of persons who would use and have used the product since she was at times the pharmacy filled her prescription for Yasmin with ZARAH and OCELLA related to her being a woman.

139.   As a direct, proximate, and foreseeable result of the actions by the Defendants, the Decedent suffered pulmonary embolism and other morbidities and died. The Defendants are therefore strictly liable to the Plaintiffs for injury to the Decedent and for the damages suffered by the Plaintiffs.

140.   As a direct, proximate, and foreseeable result of the actions by the Defendants, the Decedent developed pulmonary embolism and other morbidities and died. The Defendants are therefore liable to the Plaintiffs for the death of their daughter. It was the Defendants' acts which were the proximate cause of general and special damages suffered by Decedent and the Plaintiffs and caused the death of the Decedent. The Defendants' acts further caused the negligent infliction of emotional distress to the Decedent from the time of the acts by the Defendants until her death and caused medical costs and expenses from the time of the breach of the standard of care until her death.

141.   The Defendants and their employees' acts were the actual and proximate cause of the Decedent's death. The Plaintiffs, as heirs of the Decedent, assert their claim

for the loss of the love, companionship and consortium with their mother and daughter. The Defendants' acts further proximately caused emotional distress and depression, and loss of enjoyment of life.  The Plaintiffs  have suffered damages in the past, continue to suffer them presently, and will continue to suffer them into the future including costs of all medical treatment and loss of love and companionship of their mother and daughter and the cost of funeral and burial expenses.

142.    As a further proximate result of the Defendants' acts, the Plaintiffs  have incurred medical bills in the past, are continuing to incur medical bills, and funeral and burial expenses and future loss of financial support and income in an amount to be established at trial.

143.    The acts of the Defendants and their employees were the actual and proximate cause of the Decedent's death and the Plaintiffs' damages both special and general.

144.    As a further proximate result of the Defendants'  negligence, each and all of these damages will  continue into the future.

145.    The conduct and acts of the Defendants and each of them and their agents and employees were the actual and proximate cause of  the Plaintiff's injuries as herein above described. Had the Decedent  known that ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) was not safe and it had side effects of related to pulmonary embolism and other such morbidities, the Decedent would not have taken ZARAH

(DROSPIRENONE) and OCELLA (DROSPIRENONE) and would have used other and safer products.

## SEVENTH CAUSE OF ACTION
### (Breach of Express Warranty Against BAYER DEFENDANTS)

146.    Plaintiffs  allege and incorporate into this Cause of Action each and every paragraph in this Complaint as though fully set forth in this Complaint.

147.    The Defendants warranted that they would sell and deliver YASMIN (DROSPIRENONE) free of defects in manufacture and design.   The BAYER DEFENDANTS warranted that they would sell and deliver YASMIN (DROSPIRENONE) with appropriate warnings.  The warranties provided were express.

148.    The warranties described above were made to the end use of YASMIN (DROSPIRENONE), including the Decedent.

149.    The BAYER DEFENDANTS, by selling and delivering the defective YASMIN (DROSPIRENONE) product to the open market place, breached these express warranties to Decedent.

150.    YASMIN (DROSPIRENONE) was being used by the Decedent   in a foreseeable manner at all relevant times.  The defective and unreasonably dangerous condition (constituting the breach of warranty) of YASMIN (DROSPIRENONE) was a proximate cause of the decedent's pulmonary embolism  and other morbidities including death.

151.    On and about  August 6, 2011, the Decedent, as a direct and proximate result of using YASMIN (DROSPIRENONE), with the warranty as breached, died as a result of pulmonary embolism.

152.    The Decedent would not have taken YASMIN (DROSPIRENONE)  if she had been advised of the risks of suffering pulmonary embolism and death  and other morbidities.

153.    The Decedent  suffered  injury and died as a result of the breach of warranty.

154.    On information and belief, had the Bayer Defendants properly warned the Decedent  of the attendant risks of YASMIN (DROSPIRENONE) or have not manufactured the defective product itself, Decedent  would not have suffered pulmonary embolism and died. The Defendants' breach of express warranties was a significant contributing factor in causing the Decedent to suffer pulmonary embolism and die.

155.    As a direct, proximate, and foreseeable result of the negligence of the Bayer Defendants as described herein, the Decedent  suffered  pulmonary embolism and death the Bayer Defendants are therefore strictly liable to the Plaintiffs for the death of the Decedent.

156.    The negligence of Defendants  and their employees  was the actual and proximate cause of the Decedent's death and the Plaintiffs' general and special damages as alleged herein.  As a proximate cause of Defendants'  negligent conduct, the Decedent died and the Plaintiffs suffered the general and special damages described herein.

157.    As a direct, proximate, and foreseeable result of the negligence of the Bayer Defendants, the Decedent developed pulmonary embolism and other morbidities and died. The Bayer Defendants are therefore liable to the Plaintiffs for the death of their daughter. It was this negligence which was the proximate cause of general and special damages suffered by Decedent and the Plaintiffs and caused the death of the Decedent. The negligence of the Defendants further caused the negligent infliction of emotional distress to the Decedent from the time of the negligence of the Defendants until her death and caused medical costs and expenses from the time of the breach of the standard of care until her death.

158.    The negligence of Defendants  and their employees  was the actual and proximate cause of the Decedent's death.  The Plaintiffs, as heirs of the Decedent, assert their claim for the loss of the love, companionship and consortium with their mother and daughter.   The Defendants' negligence further proximately caused emotional distress and depression, and loss of enjoyment of life.  The Plaintiffs  have suffered damages in the past, continue to suffer them presently, and will continue to suffer them into the future including costs of all medical treatment and loss of love and companionship of their mother and daughter and the cost of funeral and burial expenses.

159.    As a further proximate result of the Defendants'  negligence, the Plaintiffs have incurred medical bills in the past, is continuing to incur medical bills, and funeral and burial expenses in an amount to be established at trial.

160.   As a further proximate result of Defendants' negligence, the Plaintiffs have suffered a loss of enjoyment of life.

161.   The negligence of the Defendants and their employees was the actual and proximate cause of Decedent's injuries and death and the Plaintiffs' general and special damages as described herein.

162.    As a proximate cause of the Defendants' negligent conduct,

Plaintiffs  suffered physical, emotional and psychological  injuries which have required medical and treatment in the past, continue to require medical  treatment, and will continue to require medical treatment into the future.

163.    As a further proximate result of the Defendants'  negligence, each and all of these damages will  continue into the future.

164.    The negligence of the Defendants' and each of them and their agents and employees were the actual and proximate cause of  the Decedent's  injuries and death as herein above described. Had the Decedent  known that YASMIN (DROSPIRENONE-ETHINYL) was not safe and it had side effects of related to pulmonary embolism and other morbidities, the Decedent  would not have taken YASMIN (DROSPIRENONE-ETHINYL) and would have used other and safer medications.

**EIGHT CAUSE OF ACTION**

**(Breach of Express Warranty Against Watson, Teva and Bar Defendants)**

165.    Plaintiffs  allege and incorporate into this Cause of Action each and every paragraph in this Complaint as though fully set forth in this Complaint.

166.    At the time that the Defendants as generic manufacturers of the generic ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) copied the formula and began manufacturing the generic versions of the brand name Yasmin or Yaz and copied for their own warning label the label from Yasmin or Yaz and at times thereafter, the Defendants knew or should have known and been aware of or should have become aware of and had reasonable evidence of safely  problems in the product itself and in the warning label used by Yasmin and Yaz and the Bayer companies including pulmonary embolism and death. The Defendants should have, but did not, ask the FDA to work towards strengthening the label that applied to both the generic Zarah and Ocella and the brand name equivalent drug, Yasmin or Yaz as it related to pulmonary embolism, including but not limited to, asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects.

167.    The Defendants warranted that they would sell and deliver ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE ) free of defects in manufacture and design.  The   Defendants warranted that they would sell and deliver ZARAH

63

(DROSPIRENONE) and OCELLA (DROSPIRENONE) with appropriate warnings and warranted that they would ask the FDA to change the labeling as to the pulmonary embolism warnings and ask the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects. The warranties provided were express.

168. The warranties described above were made to the end use of ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE), including the Decedent.

169. The Defendants, by selling and delivering the defective ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) product to the open market place, and then by failing to take further appropriate actions, including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects breached these express warranties to Decedent.

170. ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) were being used by the Decedent in a foreseeable manner at all relevant times. The defective and unreasonably dangerous condition (constituting the breach of warranty) of ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) was a proximate cause of the Decedent's pulmonary embolism and other morbidities and death.

171.    On and about  August 6, 2011, the Decedent, as a direct and proximate result of using ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE), with the warranty as breached, died as a result of pulmonary embolism.

172.    The Decedent would not have taken ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE)  if she had been advised of the risks of suffering pulmonary embolism and death  and other morbidities.

173.    The Decedent  suffered  injury and died as a result of the breach of warranty.

174.    Had the Defendants properly warned the Decedent and her health providers  of  the  attendant  risks  of  ZARAH    (DROSPIRENONE)  and  OCELLA (DROSPIRENONE) or had not manufactured the defective product itself, the  Decedent would not have suffered pulmonary embolism and died. Had the Defendants ask the FDA to change the labeling as to the pulmonary embolism warnings and ask the brand name manufacturers  through  the  CBE  or  Dear  Doctor  process  to  warn  of  the  pulmonary embolism side effects the label would have changed and the Decedent would not have suffered pulmonary embolism and died. The Defendants' breach of express warranties was a significant contributing factor in causing the Decedent to suffer pulmonary embolism and die.

175.    At the time that the Defendants as generic manufacturers of the generic ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) copied the formula and

began manufacturing the brand name Yasmin or Yaz and copied the warning label from Yasmin or Yaz and at times thereafter, the Defendants knew or should have known and been aware of or should have become aware of safely problems in the product itself and in the warning label used by Yasmin and Yaz and the Bayer companies including pulmonary embolism and death. The Defendants should have, but did not, ask the FDA to work towards strengthening the label that applied to both the generic Zarah and the brand name equivalent drug, Yasmin or Yaz as it related to pulmonary embolism. The Defendants should have but did not ask the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects.

176.     As a direct, proximate, and foreseeable result of the acts of the Defendants as described herein, the Decedent suffered pulmonary embolism and death. The Defendants and their employees' acts were the actual and proximate cause of the Decedent's death. The Plaintiffs, as heirs of the Decedent, assert their claim for the loss of the love, companionship and consortium with their mother and daughter. The Defendants' acts further proximately caused emotional distress and depression, and loss of enjoyment of life. The Plaintiffs have suffered damages in the past, continue to suffer them presently, and will continue to suffer them into the future including costs of all medical treatment and loss of love and companionship of their mother and daughter and the cost of funeral and burial expenses.

177.     As a further proximate result of the Defendants' acts, the Plaintiffs  have incurred medical bills in the past, are continuing to incur medical bills, and funeral and burial expenses and future loss of financial support and income in an amount to be established at trial.

178.   The conduct and acts of the Defendants' and each of them and their agents and employees were the actual and proximate cause of  the Plaintiffs' injuries as herein above described. Had the Decedent   known that ZARAH (DROSPIRENONE)  and OCELLA (DROSPIRENONE) were not safe and had side effects related to pulmonary embolism and other such morbidities, the Decedent would not have taken ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) and would have used other and safer products.

## NINTH CAUSE OF ACTION
### (Breach of Implied Warranty and Merchantability
### Against the BAYER DEFENDANTS)

179.     Plaintiffs  allege and incorporate into this Cause of Action each and every paragraph in this Complaint as though fully set forth in this Complaint.

180.     In manufacturing, labeling, promoting, distributing, marketing, selling, and placing in the stream of interstate commerce the drug YASMIN (DROSPIRENONE), the Bayer Defendants impliedly warranted that the same was merchantable and fit for the ordinary purposes for which such products are used.

67

181.     YASMIN (DROSPIRENONE) was not merchantable in that, as manufactured, it caused unanticipated injury to recipients such a pulmonary embolism resulting in death.

182.     As a direct, proximate, and foreseeable result of the negligence of the Bayer Defendants as described herein, the Decedent  suffered a pulmonary embolism and died.  The Bayer Defendants are therefore strictly liable to the Decedent and the Plaintiffs for injury to the Decedent.

183.     The negligence of Defendants  and their employees  was the actual and proximate cause of the Decedent's injuries and death and the Plaintiffs'  general and special damages as described herein.

184.     As a further proximate result of the Defendants'  negligence which was the proximate cause of the Decedent's injuries and death,  the Plaintiffs  have  incurred medical bills in the past, is continuing to incur medical bills, and will continue to incur medical bills into the future and also burial and funeral expenses in an amount to be established at trial.

185.     As a direct, proximate, and foreseeable result of the negligence of the Bayer Defendants, the Decedent developed pulmonary embolism and other morbidities and died. The Bayer Defendants are therefore liable to the Plaintiffs for the death of their daughter. It was this negligence which was the proximate cause of general and special damages suffered by Decedent and the Plaintiffs and caused the death of the Decedent. The

negligence of the Defendants further caused the negligent infliction of emotional distress to the Decedent from the time of the negligence of the Defendants until her death and caused medical costs and expenses from the time of the breach of the standard of care until her death.

186.   The negligence of Defendants  and their employees  was the actual and proximate cause of the Decedent's death.  The Plaintiffs, as heirs of the Decedent, assert their claim for the loss of the love, companionship and consortium with their mother and daughter.   The Defendants' negligence further proximately caused emotional distress and depression, and loss of enjoyment of life.  The Plaintiffs  have suffered damages in the past, continue to suffer them presently, and will continue to suffer them into the future including costs of all medical treatment and loss of love and companionship of their mother and daughter and the cost of funeral and burial expenses.

187.    As a further proximate result of the Defendants'  negligence, the Plaintiffs have incurred medical bills in the past, is continuing to incur medical bills, and funeral and burial expenses in an amount to be established at trial.

188.    The negligence of the Defendants and their employees was the actual and proximate cause of  Plaintiffs' injuries.

189.     As a proximate cause of the Defendants' negligent conduct,

Plaintiffs suffered physical, emotional and psychological injuries which have required medical and treatment in the past, continue to require medical treatment, and will continue to require medical treatment into the future.

190.    As a further proximate result of the Defendants' negligence, each and all of these damages will continue into the future.

191.    The negligence of the Defendants' and each of them and their agents and employees were the actual and proximate cause of the Decedent's injuries and death as herein above described. Had the Decedent known that YASMIN (DROSPIRENONE) was not safe and it had side effects of related to pulmonary embolism and other morbidities, the Decedent would not have taken YASMIN (DROSPIRENONE).

## TENTH CAUSE OF ACTION

### (Breach of Implied Warranty and Merchantability Against the Watson, Teva, and Bar Defendants)

192.    Plaintiffs allege and incorporate into this Cause of Action each and every paragraph in this Complaint as though fully set forth in this Complaint.

193.    In manufacturing, labeling, promoting, distributing, marketing, selling, and placing in the stream of interstate commerce the drug ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE), the Defendants impliedly warranted that the same was merchantable and fit for the ordinary purposes for which such products are used.

194.    At the time that the Defendants as generic manufacturers of the generic ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) copied the formula and began manufacturing the brand name Yasmin or Yaz and copied for warning label from Yasmin or Yaz and at times thereafter, the Watson, Teva, and Bar Defendants knew or should have known and been aware of or should have become aware of safely  problems in the product itself and in the warning label used by Yasmin and Yaz and the Bayer Defendants including pulmonary embolism and death. The Defendants should have, but did not, ask the FDA to work towards strengthening the label that applied to both the generic Zarah and Ocella and the brand name equivalent drug, Yasmin or Yaz as it related to pulmonary embolism. The Watson, Teva, and Bar Defendants should have but did not ask  the brand name manufacturers  to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects.

195.    ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) were not merchantable in that, as manufactured, it caused unanticipated injury to recipients such a pulmonary embolism and resulting death including the Decedent.

196.    As a result, the Plaintiffs  have suffered damages in the past, continue to suffer them presently, and will continue to suffer them into the future including lost income and support  and loss of love and companionship of their mother and daughter and the cost of funeral and burial expenses.

197.    The actions of the Defendants, and each of them and their agents and employees, were the actual and proximate cause of the Decedent's injuries and death as herein above described. Had the Decedent known that ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) were not safe, and they had side effects related to pulmonary embolism and other morbidities, the Decedent would not have taken ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE).

## ELEVENTH CAUSE OF ACTION
### (Negligent Misrepresentation Against the BAYER DEFENDANTS)

198.    Plaintiffs allege and incorporate into this Cause of Action each and every paragraph in this Complaint as though fully set forth in this Complaint.

199.    Plaintiffs claim that the Decedent was harmed when the Bayer Defendants negligently misrepresented important facts regarding YASMIN's (DROSPIRENONE) risk of causing pulmonary embolism resulting in death and other morbidities. The BAYER DEFENDANTS had sole access to material facts regarding YASMIN's (DROSPIRENONE) risk of causing pulmonary embolism and other morbidities and resulting death and by virtue of their superior knowledge, had a duty to use due care to accurately disclose their knowledge to physicians, and the public at large, including the Decedent, and to otherwise be truthful and accurate regarding YASMIN's (DROSPIRENONE) risk of causing pulmonary embolism and other morbidities associated with the product, the content of labeling, and the thrust of their marketing activities.

200.   The BAYER DEFENDANTS  represented to the Decedent and others, including the Decedent's   healthcare providers,  that an important fact was true; that is, that YASMIN (DROSPIRENONE) was safe for use and that there were no side effects related to pulmonary embolism and other such morbidities.  The BAYER DEFENDANTS' representation of fact regarding the safety of YASMIN (DROSPIRENONE) was not true because in fact YASMIN (DROSPIRENONE) does have these side effects including pulmonary embolism. The BAYER DEFENDANTS failed to use reasonable care to determine whether the representation regarding these side effects were true and knew or should have known there were not true.  The BAYER DEFENDANTS were in a better position than the Decedent to know the true facts of the side effects  related to pulmonary embolism and other morbidities. The BAYER DEFENDANTS had a financial interest in the transaction in that the sale of YASMIN (DROSPIRENONE) was very profitable for the Defendants and it was to the BAYER DEFENDANTS'  financial advantage not to disclose the side effects of related to pulmonary embolism  and other such morbidities which would have decreased and did in fact decrease the sale of YASMIN (DROSPIRENONE) and risked having YASMIN (DROSPIRENONE) being pulled from the market by government agencies. The BAYER DEFENDANTS made inaccurate representations and/or failed to use due care concerning the above matters, as herein above set forth, fostered  by their financial and corporate interest in encouraging physicians to promote and patients to consume YASMIN (DROSPIRENONE). The Decedent relied on the representation that YASMIN (DROSPIRENONE) was safe and did not have  side effects of related to

73

pulmonary embolism and other morbidities, and it was reasonable for the Decedent to do so. The Decedent suffered physical injury, financial lost and general pain and suffering and death because she relied on the BAYER DEFENDANTS' representations that YASMIN (DROSPIRENONE) was safe.

201.    The BAYER DEFENDANTS knew or should have known the true facts concerning the dangerous pulmonary embolism and other morbidities and complications of YASMIN (DROSPIRENONE), and the Decedent and her health care providers did reasonably and justifiably rely upon the material negligent misrepresentations made by the Defendants to physicians and the Decedent who relied upon the negligent misrepresentations and/or of the BAYER DEFENDANTS, whereby BAYER DEFENDANTS breached the duties owed as herein above set forth.

202.    Defendants' negligent misrepresentations and negligent non-disclosure, as aforesaid, was the direct and proximate cause of the Decedent suffering a pulmonary embolism and injury and death.

203.    As a direct, proximate, and foreseeable result of the negligent misrepresentations of the BAYER DEFENDANTS, the Decedent suffered pulmonary embolism and died. The BAYER DEFENDANTS are therefore liable to the Plaintiffs for the death of their daughter the Decedent.

204.    The negligence of Defendants and their employees was the actual and proximate cause of the Decedent's injuries and death. As a proximate cause of

Defendants' negligent conduct, the Decedent suffered physical injuries and death which required medical treatment in the past and the payment of those medical bills and for burial and funeral expenses. Had the Decedent known that YASMIN (DROSPIRENONE) was not safe, and it had side effects of related to pulmonary embolism, and other morbidities, the Decedent would not have taken YASMIN (DROSPIRENONE).

205.    As a further proximate result of the Defendants' negligence, the Plaintiffs have incurred medical bills in the past, are continuing to incur medical bills, and will continue to incur medical bills into the future in an amount to be established at trial.

206.    As a further proximate result of Defendants' negligence, the Plaintiffs have endured pain and suffering in both body and mind in an amount to be established at trial.

207.    As a direct, proximate, and foreseeable result of the negligence of the BAYER DEFENDANTS, the Decedent developed pulmonary embolism and other morbidities and died. The BAYER DEFENDANTS are therefore liable to the Plaintiffs for the death of their daughter. It was this negligence which was the proximate cause of general and special damages suffered by Decedent and the Plaintiffs and caused the death of the Decedent. The negligence of the Defendants further caused the negligent infliction of emotional distress to the Decedent from the time of the negligence of the Defendants until her death and caused medical costs and expenses from the time of the breach of the standard of care until her death.

208.    The negligence of Defendants  and their employees  was the actual and proximate cause of the Decedent's death.  The Plaintiffs, as heirs of the Decedent, assert their claim for the loss of the love, companionship and consortium with their mother and daughter.   The Defendants' negligence further proximately caused emotional distress and depression, and loss of enjoyment of life.  The Plaintiffs  have suffered damages in the past, continue to suffer them presently, and will continue to suffer them into the future including costs of all medical treatment and loss of love and companionship of their daughter and the cost of funeral and burial expenses.

209.    As a further proximate result of the Defendants'  negligence, the Plaintiffs have been unable to go about their business as they could prior to the Decedent's death, and they have  sustained economic loss in the past, are sustaining economic loss in the present, and will sustain economic loss into the future.

210.    As a further proximate result of Defendants'  negligence, the Plaintiffs have suffered a loss of enjoyment of life.

211.    The negligence of the Defendants and their employees was the actual and proximate cause of Decedent's injuries and death and the Plaintiff's general and special damages as alleged herein.

212.    As a proximate cause of the Defendants' negligent conduct, Plaintiffs suffered physical, emotional and psychological  injuries which have required medical and

treatment in the past, continue to require medical  treatment, and will continue to require medical treatment into the future.

213.     As a further proximate result of the Defendants'  negligence, each and all of these damages will  continue into the future.

214.     The negligence of the Defendants' and each of them and their agents and employees were the actual and proximate cause of the Decedent's injuries and death and the Plaintiffs' special and general damages  as herein above described. Had the Decedent known that YASMIN (DROSPIRENONE) was not safe and it had side effects of related to pulmonary embolism and other morbidities, the Decedent  would not have taken YASMIN (DROSPIRENONE).

## TWELVETH  CAUSE OF ACTION
### (Negligent Misrepresentation Against the Watson, Teva and Bar Defendants)

215.     Plaintiffs  allege and incorporate  into this Cause of Action each and every paragraph in this Complaint as though fully set forth in this Complaint.

216.     At the time that the Defendants as generic manufacturers and distributors of the generic ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) copied the formula and began manufacturing the generic version of the brand name Yasmin or Yaz and copied the warning label from Yasmin or Yaz and at times thereafter, the Defendants knew or should have known and been aware of or should have become aware of safely problems in the product itself and in the warning label used by Yasmin and Yaz and the

Bayer companies including pulmonary embolism and death. The Defendants should have, but did not, ask the FDA to work towards strengthening the label that applied to both the generic Zarah and Ocella and the brand name equivalent drug, Yasmin or Yaz as it related to pulmonary embolism and resulting death. The Defendants should have but did not ask the brand name manufacturer to change the labeling as to the pulmonary embolism warnings and ask the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects.

217.   Plaintiffs  claim that the Decedent was harmed when the Defendants negligently misrepresented  important facts regarding ZARAH  (DROSPIRENONE) and OCELLA's (DROSPIRENONE) risk of causing pulmonary embolism and other  morbidities and then failing to take further appropriate actions, including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects. The Defendants had sole access to material facts regarding ZARAH (DROSPIRENONE) and OCELLA's (DROSPIRENONE) risk of causing pulmonary embolism and death from pulmonary embolism and other morbidities  and by virtue of their superior knowledge, had a duty to use due care to accurately disclose their knowledge to physicians, and the public at large, including the Decedent, and to otherwise be truthful and accurate regarding ZARAH (DROSPIRENONE) and OCELLA's (DROSPIRENONE) risk of causing pulmonary embolism and other morbidities associated with the product, the

content of labeling, and the thrust of their marketing activities. They further had a duty to take further appropriate actions including, but not limited to,  asking  the FDA to change the  labeling  as  to  the  pulmonary  embolism  warnings  and  ask  the  brand  name manufacturers  through  the  CBE  or  Dear  Doctor  process  to  warn  of  the  pulmonary embolism side effects.

218.   The Defendants  represented to the Decedent and others, including the Decedent's   healthcare providers,  that an important fact was true; that is, that ZARAH (DROSPIRENONE) and OCELLA  (DROSPIRENONE) were safe for use and that there were no side effects related to pulmonary embolism  and other such  morbidities.  The Defendants' representation of fact regarding the safety of ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) was not true because in fact ZARAH  (DROSPIRENONE) and  OCELLA   (DROSPIRENONE)  do  have  these  side  effects  including  pulmonary embolism.  The  Defendants  failed  to  use  reasonable  care  to  determine  whether  the representations regarding these side effects were true and knew or should have known there were not true and then failed to take appropriate actions  including but not limited to asking the FDA to change the labeling as to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects. The Defendants were in a better position than the Decedent to know the true facts of the side effects  related to pulmonary embolism and other morbidities. The Defendants had a financial interest in the transaction in that the sale

of ZARAH  (DROSPIRENONE) and OCELLA (DROSPIRENONE) was very profitable for the Defendants and it was to the Defendants' financial advantage not to disclose the side effects of related to pulmonary embolism  and other such morbidities which would have decreased and did in fact decrease the sale of ZARAH (DROSPIRENONE)and OCELLA (DROSPIRENONE) and risked having  ZARAH  (DROSPIRENONE) and OCELLA (DROSPIRENONE) being  pulled  from  the  market  by  government  agencies.  The Defendants made inaccurate representations and/or and failed to use due care concerning the above matters, as herein above set forth, fostered  by their financial and corporate interest  in  encouraging  physicians  to  promote  and  patients  to  consume  ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE). The Decedent and her health care providers relied on the representation that ZARAH   (DROSPIRENONE) and OCELLA (DROSPIRENONE) was safe and did not have  side effects related to pulmonary embolism and other  morbidities, and it was reasonable for the Decedent  to do so.  The Decedent suffered physical injury and death and  general pain and suffering and death because she and her health care providers relied on the Defendants' representations that ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) were safe.

219.   The Defendants knew or should have known the true facts concerning the dangerous  pulmonary  embolism  and  other  morbidities  and  complications  of  ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) and then failed  to take further appropriate actions, including but not limited to asking the FDA to change the labeling as

to the pulmonary embolism warnings and asking the brand name manufacturers through the CBE or Dear Doctor process to warn of the pulmonary embolism side effects. As a result, the Decedent and her health care providers did reasonably and justifiably rely upon the material negligent misrepresentations made by the Defendants to physicians and the Decedent.

220.    Defendants' negligent misrepresentations and negligent non-disclosure, as aforesaid, was the direct and proximate cause of the Decedent suffering a pulmonary embolism and injury and death.

221.    As a direct, proximate, and foreseeable result of the negligent misrepresentations of the Defendants, the Decedent suffered pulmonary embolism and died.  The Defendants are therefore liable to the Plaintiffs for the death of their daughter the Decedent.

222.    The negligent misrepresentations of Defendants and their employees were the actual and proximate cause of the Decedent's injuries and death.  As a proximate cause of Defendants' negligent misrepresentations, the Decedent suffered physical injuries and death which required medical treatment in the past and the payment of those medical bills and for burial and funeral expenses. Had the Decedent known that ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE) were not safe and had side effects of related to pulmonary embolism, and other morbidities, the Decedent would not have taken ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE).

223.   As a further proximate result of the Defendants' negligent misrepresentation, the Plaintiffs have incurred medical bills in the past, is continuing to incur medical bills, and will continue to incur medical bills into the future in an amount to be established at trial.

224.   As a further proximate result of Defendants' negligent misrepresentation, the Plaintiffs have endured pain and suffering in both body and mind in an amount to be established at trial.

225.   As a direct, proximate, and foreseeable result of the negligent misrepresentation of the Defendants, the Decedent developed pulmonary embolism and other morbidities and died. The Defendants are therefore liable to the Plaintiffs for the death of their daughter. It was this negligent misrepresentation which was the proximate cause of general and special damages suffered by Decedent and the Plaintiffs and caused the death of the Decedent. The negligent misrepresentation of the Defendants further caused the negligent infliction of emotional distress to the Decedent from the time of the negligence of the Defendants until her death and caused medical costs and expenses from the time of the breach of the standard of care until her death.

226.   The negligent misrepresentation of Defendants and their employees was the actual and proximate cause of the Decedent's death. The Plaintiffs, as heirs of the Decedent, assert their claim for the loss of the love, companionship and consortium with their mother and daughter.   The Defendants' negligent misrepresentation further proximately caused emotional distress and depression, and loss of enjoyment of life. The

Plaintiffs have suffered damages in the past, continue to suffer them presently, and will continue to suffer them into the future including costs of all medical treatment and loss of love and companionship of their daughter and the cost of funeral and burial expenses.

227.   As a further proximate result of the Defendants' negligent misrepresentation, the Plaintiffs have incurred medical bills in the past, is continuing to incur medical bills, and funeral and burial expenses in an amount to be established at trial.

228.   As a further proximate result of the Defendants' negligent misrepresentation, the Plaintiffs have been unable to go about their business as they could prior to the Decedent's death, and they have  sustained economic loss in the past, are sustaining economic loss in the present, and will sustain economic loss into the future.

229.   As a further proximate result of Defendants' negligent misrepresentation, the Plaintiffs have suffered a loss of enjoyment of life.

230.   The negligent misrepresentation of the Defendants and their employees was the actual and proximate cause of Decedent's injuries and death and the Plaintiffs' general and special damages as alleged herein.

231.   As a proximate cause of the Defendants' negligent misrepresentation, Plaintiffs  suffered physical, emotional and psychological  injuries which have required medical and treatment in the past, continue to require medical  treatment, and will continue to require medical treatment into the future.

232.   As a further proximate result of the Defendants' negligent misrepresentation, each and all of these damages will  continue into the future.

233. The negligent misrepresentation  of the Defendants' and each of them and their agents and employees were the actual and proximate cause of  the Decedent's injuries and death and the Plaintiffs' special and general damages  as herein above described. Had the Decedent  known that ZARAH  (DROSPIRENONE) and OCELLA (DROSPIRENONE) were  not safe and had side effects of related to pulmonary embolism and other morbidities, the Decedent  would not have taken ZARAH (DROSPIRENONE) and OCELLA (DROSPIRENONE).

### JURY DEMAND

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs  demand a trial by jury of any issue triable of right by jury  upon the filing of this Complaint.

**WHEREFORE**, the Plaintiffs pray  for Judgment as follows:

On all of the Plaintiff's Causes of Action, for general and special damages against the  Defendants in an amount to be proven at trial, but in any event in an amount in excess of $75,000 exclusive of interest and costs, for each of their individual wrongful death claims and for the survival action for the Estate of Emma Camp.

On all Claims for Relief, for costs, pre- and post-judgment interest and attorney fees to the extent allowed by law  or within the Court in its discretion;

On all Claims for Relief, for prejudgment interest on special damages to the extent allowed by law;

For such other and further relief as the Court may deem appropriate.

Dated: July 24, 2013.

RESPECTFULLY SUBMITTED,

/s/ Charles A. Gruber

_____

Charles A. Gruber

Charles A. Gruber, Attorney at Law

POB 900122

Sandy UT 84090

Telephone: 801 523 0110

Fax: 801 523 3630

Email: gruberattorney@yahoo.com

Attorney for Plaintiffs